UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARL R. BOATNER                                                                                       PLAINTIFF

VERSUS                                           CIVIL ACTION NO. 3:16CV243-CWR-RHW

CAROLYN W. COLVIN
Acting Commissioner of Social Security                                                   DEFENDANTS

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Before the Court is Carl Boatner's complaint appealing the decision of the Commissioner of Social Security (Commissioner). Boatner filed an application for Supplemental Security Income alleging disability beginning September 24, 2013, due to anxiety, depression, obesity, heart attack, and back problems. Doc. [8] at 252. He was 48 years old at the filing date with a ninth grade education and no past relevant work experience. *Id.* at 32, 75, 232.

An Administrative Law Judge conducted a hearing on Boatner's claim and issued an unfavorable decision on December 1, 2015. *Id.* at 20-33. The ALJ concluded that Boatner had severe impairments of diabetes, hepatic cirrhosis, hepatitis C, coronary artery disease status post-coronary artery disease bypass grafting x3, obesity, hypertension, chronic obstructive pulmonary disease, major depressive disorder, anxiety/panic disorder, agoraphobia, and alcohol and cannabis dependence in reported remission. *Id.* at 22. As a result, the ALJ found that Boatner possessed the residual functional capacity (RFC) to perform light work but with additional limitations. *Id.* at 25. Specifically, the ALJ found Boatner could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours each in an 8-hour workday with an option to sit or stand after 60 minutes; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, and scaffolds. *Id*. The ALJ further found Boatner must avoid moderate exposure to pulmonary irritants; including fumes, odors,

dust, gas, and poor ventilation and hazards. Boatner also must avoid dangerous moving machinery and unprotected heights. *Id.* The ALJ also found that Boatner could perform simple, routine, repetitive tasks of unskilled work; maintain attention and concentration for two-hour blocks; have occasional interaction with supervisors; work in proximity but not in coordination with co-workers and no interaction with the general public; and perform low stress work (no fast-paced production requirement, only simple work-related decisions, with few or no changes in work setting). *Id.*

The ALJ concluded that Boatner could not perform any past relevant work. *Id.* at 32. However, relying on the testimony of a vocational expert, the ALJ found that Boatner could perform other jobs existing in significant numbers in the national economy. *Id.* at 32-33. Accordingly, the ALJ found Boatner to be not disabled. On February 23, 2016, the Appeals Council denied Boatner's request for review of the ALJ's decision. *Id.* at 5-10. Having completed the administrative process, Boatner then filed the instant lawsuit appealing the Commissioner's decision.

Pending before the Court are Boatner's motion for summary judgment and the Commissioner's motion to affirm. Doc. [9] & [12]. In the motion for summary judgment, Boatner argues (1) the ALJ did not consider all of his medically determinable impairments and functional limitations in determining his RFC; (2) the ALJ did not properly determine whether Boatner had the RFC to sustain work activity during the entire period at issue; and (3) the ALJ relied on contradictory testimony from a vocational expert to determine that Boatner was not disabled.

**Law and Analysis**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §

404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**Severity Standard, Severe Impairments, and Residual Functional Capacity**

As an initial matter, Boatner argues that the ALJ applied the wrong legal standard for severe impairment. With respect to severity of impairments, the ALJ stated the following:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

Doc. [8] at 21. Boatner asserts that this statement is at odds with the Fifth Circuit's holding in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). In *Stone* the Fifth Circuit held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or previous work experience." *Id.* at 1101. The Fifth Circuit held

4

that the ALJ erred in finding that the claimant did not have a severe impairment "on the basis of medical evidence alone". *Id.* at 1100, 1106. Furthermore, the Fifth Circuit stated, "we will assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion . . . ." *Id*. at 1106.

In a later opinion, the Fifth Circuit indicated that a non-severity finding would not constitute error even if the impairment were a "slight abnormality of minimal effect on ability to work." *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000). The Fifth Circuit further endorsed this approach in a 2010 unpublished opinion when it stated that an impairment is "not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 Fed. App'x 459, 461, 2010 WL 2802372, *1 (5th Cir. 2010)(unpublished). In other words, the standard articulated by the ALJ in the instant case conforms closely to that used by the Fifth Circuit in both published and unpublished decisions post-*Stone*; therefore, the undersigned does not recommend reversal on this basis. In the instant case, unlike in *Stone*, it does not appear that the ALJ determined non-severity on the basis of medical evidence alone. Rather, the severity/non-severity standard articulated by the ALJ included consideration of the impairments effect on claimant's ability to work. *See* Doc. [8] at 21.

Even assuming *arguendo* that the ALJ recited the incorrect definition for severe impairment, any error is harmless. At step two of the five-step sequential analysis, the ALJ found that Boatner had numerous severe impairments. Any error in not following the *Stone* standard at step two is harmless, because the ALJ ultimately found at step five that the claimant is not disabled by his severe impairments. "Procedural perfection is not required unless it affects the substantial rights of a party." *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The

severity or non-severity of Boatner's impairments does not provide a basis for remand. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).

Boatner identifies personality disorder as an impairment that he contends the ALJ omitted from the list of severe impairments. In support of this argument, Boatner relies on the opinion of Dr. Randy Burke who concluded that Boatner satisfied the diagnostic criteria for depressive disorder, anxiety disorder, and personality disorder. The ALJ expressly found that Boatner suffered from severe impairments of major depressive disorder and anxiety/panic disorder; therefore, Boatner's argument appears to be that the ALJ should have included personality disorder as an additional mental impairment.

Boatner fails to explain how his personality disorder would change the limitations as assigned by the ALJ. To the contrary, the ALJ included significant limitations based on Boatner's overall mental condition by restricting Boatner to simple, routine, repetitive tasks, allowing only occasional interaction with supervisors, no coordination with co-workers, no interaction with the general public, and low stress work. Doc. [8] at 25. In fact, as noted by the ALJ, Dr. Burke opined that Boatner's "mood, anxiety, and *personality* difficulties were likely to have a significant impact on his ability to function in a normal work setting and on his ability to interact with coworkers." *Id.* at 30 (emphasis added). Although the ALJ gave "little weight" to Dr. Burke's opinion, he nevertheless placed special conditions on Boatner's work setting, restricted coordination with supervisors and co-workers, and restricted interaction with the

6

general public. Thus, the ALJ's RFC assessment reflected Dr. Burke's opinion regarding Boatner's mental condition (including personality disorder) and any resulting limitations.

Boatner also argues that the ALJ failed to incorporate into the RFC all of the limitations caused by other various impairments. According to Boatner, the ALJ did not consider whether he has transient ischemic attacks or episodes of demand ischemia, did not evaluate the effect of severe stenosis of the iliac arteries or moderate stenosis of the right internal carotid artery, and made no mention of the findings of decreased sensation and strength in the left upper extremity or decreased deep tendon reflexes. He further asserts that has been prejudiced by the ALJ's failure to consider significant cerebrovascular disease, weakness and sensory loss. Finally, he asserts that the ALJ failed to account for Boatner's hospitalization and hospice care and their effect on his ability to maintain employment on a regular and consistent basis.

Boatner's assertion that the ALJ did not evaluate the effects of ischemia, stenosis of the arteries, or decreased sensation and strength of the left upper extremity is without merit. The ALJ specifically considered diagnostic testing done at the University of Mississippi Medical Center, including evidence of numbness, weakness and paresthesia in the left upper extremity; as well as issues related to his carotid artery and arterial stenosis. *See id.* at 26-27. The ALJ considered and weighed the results of the CT angiogram, which are cited by Boatner as evidence of greater limitations. The ALJ also considered evidence from Baptist Medical Center relating to Boatner's cardiovascular health, including multi-vessel ischemia. *Id.* at 27. Based on Boatner's extensive history of cardiovascular issues, the ALJ found that Boatner suffered from severe impairments relating to coronary artery disease and post coronary artery bypass grafting. Boatner's reference to conditions related to his cardiovascular health does not alter the fact that the ALJ gave extensive consideration to Boatner's cardiovascular health in general and imposed

7

limitations on his ability to work based on severe impairments related to Boatner's cardiovascular health.

Boatner further argues that each of the jobs identified by the vocational expert requires at least frequent reaching, handling, and fingering. Consequently, he suggests that the RFC is inadequate because it failed to include limitations based on weakness and sensory loss. The ALJ concluded that there were no manipulative limitations appreciably restricting the range of light work. *Id.* at 28-29. Boatner fails to point to any evidence in the record to support a finding of greater manipulative limitations. The ALJ considered some of the same medical records from the University of Mississippi Medical Center now cited by Boatner. For instance, the ALJ noted normal range of motion with some decreased strength in Boatner's left extremities (3/5). *Id.* at 26. The ALJ also cited to medical evidence indicating "no neurological deficits." *Id.* at 27. Other substantial medical evidence contained in the medical record also supports the ALJ's finding of no manipulative limitations. For example, Dr. William Perry found Boatner's neurological examination to be normal, with normal sensory and motor functions. *Id.* at 507. Dr. William Harris examined Boatner and found him to have normal extremities and to be neurologically grossly intact with no focal motor or sensory deficits. *Id.* at 703. It is not surprising that the ALJ did not assign limitations based on weakness and sensory loss, because the medical record repeatedly indicated no motor weakness or sensory loss. *See id.* at 493, 507, 665, 673, 742, 803. Likewise, the medical records frequently reported normal extremities. *See id* at 476, 490, 500, 504, 665, 673, 803.

Boatner also argues that the ALJ failed to consider whether he would be able to work on a regular and consistent basis. He cites specifically to frequent hospital visits and three and a half months spent in hospice care. "If an individual's medical treatment significantly interrupts

the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).  The ALJ is not required in every case to make specific and distinct findings that the claimant can maintain employment over a sustained period.  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).  An RFC determination itself encompasses the necessary finding unless the claimant's ailment, by its nature, "waxes and wanes in its manifestation of disabling symptoms."  *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).  A specific finding is required if there is "evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC."  *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

     Boatner stayed for two weeks in the hospital while undergoing three vessel coronary artery bypass grafting.  Doc. [8] at 711-12.  He also had several hospital visits from May to July 2015, leading up to bypass surgery due to complaints relating to chest pain, left-side pain and weakness, and shortness of breath.  *See id.* at 603, 606, 675-76, 699-700, 711-12, 834.  The record indicates that Boatner was admitted to hospice care in July 2015 due to "a terminal diagnosis of Chronic Obstructive Pulmonary Disease".  Doc. [8] at 593.  According to Boatner's testimony, he began hospice care right after bypass surgery.  *Id.* at 76.  In his decision, the ALJ expressly considered Boatner's hospice care and noted that Boatner's condition had improved since the application date.  *Id.* at 31.  As noted by the ALJ, Boatner's health improved to the point he was discharged from hospice because he no longer met the criteria for hospice benefits.  *Id.*  Hence, the ALJ weighed and considered the hospice care evidence when assigning

9

limitations.  Given the improvement in Boatner's condition and his ultimate release from hospice care, the ALJ apparently found this factor to weigh against finding greater limitations.  The record indicates that many of Boatner's hospital visits, including the two-week hospital stay and hospice care occurred during and after bypass surgery.  There is no suggestion in the record that Boatner's bypass surgery or COPD is a condition that waxes and wanes or that it will require ongoing hospitalizations or further hospice care.  Consequently, the undersigned finds that the ALJ was not required to make specific finding when evaluating Boatner's bypass surgery and COPD in the consideration of whether he could perform work on a regular and continuing basis.  *See Williams v. Colvin*, No. 3:14-CV-3680-BH, 2016 WL 1182468, at *7-8 (N.D.Tex. Mar. 28, 2016); *Williams v. Astrue*, No. 3:09-CV-0103-D, 2010 WL 517590, at *3 (N.D.Tex. Feb. 11, 2010).

Boatner asserts that the ALJ failed to take into account memory and concentration problems.  In his motion for summary judgment, Boatner made only a passing reference to memory and concentration problems.  Doc. [10] at 11.  In his reply brief, he elaborates on this point and asserts that the ALJ failed to consider cerebrovascular disease and the effects thereof on Boatner's RFC.  Doc. [14] at 3.  In the decision, the ALJ expressly considered Boatner's alleged issues with concentration, persistence or pace and found that he had "moderate difficulties".  Doc. [8] at 24.  In fact, the ALJ considered the very same memory tests cited by Boatner in his reply brief.  *Id.*  Based on these tests and the medical evidence of record, the ALJ assigned "moderate limitation in this area." *Id.*  The RFC then reflected these limitations by restricting Boatner to simple, routine, repetitive tasks, with only simple work-related decisions and few or no changes in work setting.  Boatner's contention that the ALJ somehow failed to consider or include limitations based on concentration and memory problems is without merit.

The undersigned concludes that substantial evidence supports the ALJ's findings with regard to Boatner's RFC.

**Step Five Analysis: Other Jobs**

Boatner argues that the Commissioner failed to establish that Boatner could perform other jobs existing in significant numbers in the national economy. In concluding that Boatner could perform other jobs, the ALJ relied on a vocational expert's testimony. At the hearing, the ALJ presented the vocational expert with a hypothetical incorporating the limitations reflected in Boatner's RFC, *i.e.* light work with additional limitation. The vocational expert identified the occupations of bench assembler, small parts assembler and electronic worker as work that Boatner could perform based on his RFC. The vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

Boatner challenges the reliability of the vocational expert's testimony because of an alleged internal contradiction in the expert's testimony and an alleged inconsistency between his testimony and the *Dictionary of Occupational Titles* (DOT). During his testimony, the vocational expert indicated that the occupations of bench assembler, small parts assembler and electronic worker could be performed by an individual capable of performing either light work or sedentary work. The ALJ adopted the vocational expert's testimony to the extent that Boatner could perform these occupations at the light range of work. Whether the same occupations could be performed at the sedentary level is irrelevant with respect to the RFC assigned to Boatner by the ALJ; therefore, the alleged inconsistency is not a basis for reversing the decision of the ALJ.

To the extent that Boatner argues that the vocational expert's testimony contradicts the DOT, this argument should have been raised at the administrative level. As explained by the

Fifth Circuit, "[c]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146-47.  The undersigned finds that substantial evidence, in the form of a vocational expert's testimony, supports the ALJ's finding that Boatner is capable of performing jobs that exist in significant numbers in the national economy.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends Carl Boatner's [9] Motion for Summary Judgment be DENIED and that the [12] Motion to Affirm the Commissioner's Decision by GRANTED.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      SO ORDERED AND ADJUDGED, this the 27th day of July, 2017.

      /s/ *Robert H. Walker*
      ROBERT H. WALKER
      UNITED STATES MAGISTRATE JUDGE